NEWMAN, Circuit Judge,
dissenting.
This is not a simple question of the legal status of patented uses of unpatented drugs. This is a legal policy issue, for the patent law implements á complex balance between the incentive to develop new medicinal treatments in the public interest, while facilitating competition after patent expiration.
The product colchicine has been used to treat gout for centuries, but was known to have highly toxic side effects. Takeda discovered and developed modes of treatment at reduced toxicity. . Takeda took these methods and products through clinical trials and FDA approval, and obtained patents on the treatment methods. My colleagues hold that none of these patents is enforceable against Hikma, a new provider of colchicine.
It is agreed that Hikma is not a direct infringer of the Takeda patents, and my *636 colleagues hold that Hikma does not induce infringement because the official Hikma “label” does not contain directions to use colchicine in accordance with the Takeda patented uses. Takeda argued that it suffices that the Hikma label directs patients to tell a health care provider if the affliction of acute gout flares arises, because the health care provider will prescribe the Takeda method of use. My colleagues hold that such circumstance cannot produce induced infringement.
In my view, these events do not produce a simple, bright line rule of law. In this preliminary injunction proceeding, the parties produced conflicting evidence as to the prevalence of gout flares and the likelihood that a doctor would prescribe the patented Takeda treatments. Precedent is also conflicting if generalized to all circumstances. In Toshiba Corp. v. Imation Corp., 681 F.3d 1358, 1364 (Fed.Cir.2012), this court held that “[t]he existence of a substantial non-infringing use does not preclude a finding of inducement.” But in Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1366 (Fed.Cir.2003) this court said that “[wjhere a product has substantial noninfringing uses, intent to induce infringement cannot be inferred even when [the accused infringer] has actual knowledge that some users of its product may be infringing the patent.”
The panel majority today adopts a rule that inducement cannot be found, whatever the facts of the particular medicament and use. That is seriously flawed, for the variety of medicinal situations is unlimited. In turn, the public interest in new uses, new methods, and new combination treatments is disserved by a rule that is a disincentive to the development of new uses of unpatented medicinal products.
Thus I dissent from the court’s ruling that the provider of a known drug product, with knowledge that it is likely to be used in direct infringement, can never be liable for induced infringement. These are fact-specific circumstances, and are' not amenable to final disposition at a preliminary , injunction hearing. The question requires trial on the facts of this case.
Discussion
The panel majority presents an incomplete picture of the facts and the law and ignores the public interest in the development of improved methods of treatment.
Although colchicine is a known gout treatment, Takeda, through its predecessor Mutual, developed new treatment protocols for acute gout flares, conducted clinical trials, including treatment for patients concomitantly taking other drugs, and secured FDA approval for safety and efficacy of specified dosages and combinations and schedule of administration. This information is included on the FDA-approved Takeda label, and omitted from the Hikma label.
Hikma provides colchicine capsules in the same 0.6 mg dosage as the Takeda approved product, but the FDA permitted Hikma to omit from its label the combinations and acute flare treatment ■ method patented by Takeda. Instead, the Hikma label instructs users that if acute gout flares arise, “tell your healthcare provider.” [1]
Takeda argues that the Hikma label statement is an inducement to infringe, *637 providing testimony from physicians that they would tell the patient to use the Takeda protocol. Hikma provided contrary testimony. My colleagues on this panel hold that it is “not sufficient for inducement” that physicians and patients would directly infringe the Takeda patents. Maj. Op. at 631. To the contrary, it is highly relevant, for this situation does not lend itself to a rigid, all-purpose rule of law. This should be a fact-dependent, case-by-case determination based on evidence of likelihood and intent for the particular unpatented drug and patented new use.
The panel majority goes too far, and states a general rule that provides easy avoidance of patents on new uses and improvements. The Hatch-Waxman Act is intended to encourage drug research and development, not to provide a disincentive by negating enforcement of improvement patents by the simple expedient of omitting the improvement from the label. With the removal of the patent incentive for improvements, the loser is the afflicted public.
The panel majority is incorrect in stating that “in the Hatch-Waxman Act context. ... [t]he label must encourage, recommend, or promote infringement.” Maj. Qp. at 631 (citing Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)). The FDA label is not a vehicle.of promotion of any use; it is a record of approved safety and efficacy of the product as used in accordance with the label. Nor does the FDA “aid and abet” infringement by including approved uses on the label. Grokster is a copyright case, and although there is common law commonality in the word “inducement,” questions of intent and scienter are as fact-specific in the copyright field as in connection with patents. An oversimplified analogy between copyright and patent causes does not aid understanding of these complex issues.
The panel majority also appears to misunderstand the Hatch-Waxman Act. The majority says “the statute was designed to enable the sale of drugs for non-patented uses even though this would result in some off-label infringing uses,” Maj. Op. at 631, citing purported authority in Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, — U.S.-, 132 S.Ct. 1670, 1681-82, 182 L.Ed.2d 678 (2012); Warner-Lambert, 316 F.3d at 1359. That is a misreading of statute and precedent. The Hatch-Wax-man Act is not designed to enable off-label uses, whether or not they are infringing.
' The cited cases do not hold otherwise. To the contrary, Warner-Lambert states that “ ‘[I]f there are indications which are claimed by any use patent and for which the [ANDA] applicant is not seeking approval, then an ANDA must state that the applicant is not seeking approval for those indications which are claimed by such use patent.’ ” 316 F.3d at 1359 (quoting House Report No. 98-857).
Takeda argues that the Hikma label, which mentions acute gout flares but advises afflicted persons to see a physician instead of reciting the FDA-approved protocol, suffices to induce infringement. Unlike the facts of Warner-Lambert, Takeda is not “asserting patents on unapproved uses,” 316 F.3d at 1359. It is infringement of the approved patented uses that Takeda states is induced by instructing the patient to tell a doctor in the event of acute flares. Takeda offered evidence that the physician is likely to prescribe the Takeda protocol and dosage for treatment of acute flares. Resolution ■ of the question of inducement depends on the facts of the case. However, the panel majority rejects even the need for such resolution, stating that “we need not decide whether evidence as to the *638 invariable response of physicians could ever transform a vague label into active encouragement.” Maj. Op. 632. To the contrary: that is the issue of this case.
The trier of fact must have the opportunity to consider the evidence of how particular uses are made known and implemented for the Hikma product. ’ The panel majority misstates my argument, for I do not propose that liability for inducement is automatic. Here, Hikma instructs that if acute flares arise, “tell your healthcare provider”; and Takeda presented evidence that the doctor is likely to prescribe the Takeda protocol, for that protocol is approved by the FDA and is known to physicians who treat gout. The panel majority errs in discarding all this as irrelevant, for the knowledge and extent and likelihood of infringement are highly relevant to whether infringement is deemed induced.
These aspects warrant full development of fact and law, and thoughtful application to this case.

. The FDA initially objected to this omission from the Hikma label, stating that "If Mitigare is being used for prophylaxis, it may be natural for the provider to use it for acute treatment as well.” Hikma then added to its label that Mitigare was not "studied” for “safety and effectiveness” of treatment of acute gout flares. On this statement, the FDA withdrew its objection.